UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROSEHOFF, LTD.,                                                    **DECISION**
                                       Plaintiff,                      **and**
         v.                                                           **ORDER**

TRUSCOTT TERRACE HOLDINGS LLC,
TRUSCOTT TERRACE HOLDINGS GROUP LLC,          **14-CV-277S(F)**
TRUSTCOTT TERRACE INTERNATIONAL HOLDINGS
GROUP, LLC,
GREGORY GANNON,
GORDON GANNON,
                                       Defendants.
_____

APPEARANCES:          BARCLAY DAMON, LLP
                      Attorneys for Plaintiff
                      CHARLES B. von SIMSON, of Counsel
                      200 Delaware Avenue, Suite 1200
                      Buffalo, New York   14202

                      STEPHEN F. SZYMONIAK, ESQ.
                      Attorney for Defendants
                      262 Brompton Road
                      Williamsville, New York 14221


        In this declaratory judgment action, filed April 16, 2014, Plaintiff seeks to annul

various property rights Plaintiff claims Defendants have asserted in Cataclean, an after-

market automobile fuel additive which purports to enhance auto engine performance

particularly for fuel injection systems and catalytic converters.  As alleged by Plaintiff,

which owns trademark registrations and patents in the Cataclean packaging and

compound, Defendants' claims cover numerous aspects of the Cataclean product

including copyright, trademark, trade dress, and patent rights relating to labelling, bottle

design, and the underlying chemical compound of the Cataclean product under both

U.S. and U.K. law.  The Truscott Defendants are assignees of patents and trade dress

rights relating to the Cataclean product and Defendants Gregory and Gordon Gannon ("the Gannon Defendants") brother who are former managers of the U.S. distributor for Cataclean, Cataclean Americas LLC, ("CAL").  After Plaintiff caused the termination of the Gannon Defendants' management authority in CAL in 2013, Defendants asserted rights in the Cataclean products against Plaintiff and certain of Plaintiff's customers and licensees.  Plaintiff's First Set of Interrogatories and Document Requests which included a request for production of electronically stored documents, particularly e-mails, relevant to Plaintiff's claims, was served April 17, 2015.  Because of Defendants' failure to fully respond (Dkt. 42-5), Plaintiff moved to compel (Dkt. 35) which was granted on the record (Dkt. 41) following oral argument on July 29, 2015.  Thereafter, on October 28, 2015, Plaintiff again moved to compel more complete responses to Plaintiff's document requests noting Defendants' response served June 15, 2015 (Dkt. 42-5) had failed to produce any responsive e-mails.  (Dkt. 42) ("Plaintiff's motion").  Plaintiff also moved to compel the deposition of Defendant Gordon Gannon.

        In Defendants' response, Defendants stated Defendants were withdrawing Defendants' statutory trade dress, bottle design (Dkt. 55-1 at 7), private label copyright registration, and patent claims.  Dkt. 42-5 (*passim*); Dt. 49 ¶ 20.  Despite Defendants' stated intention to moot all but Plaintiff's claims relating to the Defendants' asserted rights to the Cataclean bottle design and labelling, Plaintiff maintains the requested discovery remained relevant to Defendants' continued refusal to abandon Defendants' common law rights in the design of the plastic bottle which Defendants claim enhances the marketing and use of the Cataclean product.  Dkt. 50 ("Defendants will defend common law or secondary meaning rights to the [Cataclean] bottle design as

challenged in Plaintiff's second cause of action [alleging Defendants' asserted trade dress rights in the bottle]") (bracketed material added).[1]  Finding that Defendants had failed to demonstrate Defendants had made a reasonable effort to search for and produce responsive documents, especially e-mails between the Gannon Defendants, the court, by Decision and Order filed December 4, 2015, (Dkt. 48) ("The December 4, 2015 D&O"), granted Plaintiff's motion and required Defendants produce the requested documents and provide affidavits describing all computers and storage devices or services used by Defendants during the relevant period of 2010 – 2014 to create and store responsive documents, particularly e-mails, and, if such devices were destroyed, the circumstances of such destruction.  December 4, 2015 D&O at 4.  The court also directed Defendant Gordon Gannon's deposition be conducted within 30 days, *id.*, and that Defendants show cause why Plaintiff's expenses incurred in connection with Plaintiff's motion should not be awarded pursuant to Fed.R.Civ.P. 37(a)(5)(A) ("Rule 37(a)(5)(A)"), and how such expenses should be apportioned between Defendants and Defendants' counsel.  *Id.*

In opposition to the award of sanctions, Defendants contend that based on Defendants' stated willingness during mediation to withdraw Defendants' previously asserted rights in the Cataclean product, labelling and bottle design, except for Defendants' common law trade dress rights in the shape of the bottle, any inadequacies in Defendants' required responses to Plaintiff's document requests should be excused. Dkt. 49 ¶¶ 19, 26 (referring to Defendant Truscott Terrace Holdings, LLC's common law right to the Cataclean bottle design, acquired by assignment from Defendant Gregory

---

[1]  In Plaintiff's recently filed motion for summary judgment (Dkt. 55), Plaintiff states Defendants also continue to assert Defendants' registered copyright in the Cataclean bottle's labelling.  Dkt. 55-1 at 4.

Gannon who designed the bottle, Dkt. 49-3 ¶ 32, and Defendants' "reasonable" decision not to engage in full-throated discovery until a suitable stipulation significantly reducing the scope of Plaintiff's claim had been executed).[2]   In response to the court's direction in the December 4, 2015 D&O to describe Defendants' effort to comply with Plaintiff's document requests, Defendants also filed the Affidavits of Defendants Gregory Gannon and Gordon Gannon (Dkts. 49-3 and 49-5, respectively) and the Affidavit of Sheila Gannon, wife of Defendant Gregory Gannon (Dkt. 49-4).

In Gregory Gannon's affidavit, Mr. Gannon recounts using three computers to produce potential responsive documents between 2008 and 2014.  Specifically, Gregory Gannon states that files created in an HP laptop were transferred to an Apple iMac 27 in 2010, when the HP laptop was discarded.  Dkt. 49-3 ¶¶ 9-10.  Because of subsequent user problems with the Apple iMac computer, Gregory Gannon's files on the iMac were then transferred to a replacement which Apple provided.  *Id.* ¶ 11.  In 2012, another HP laptop was used by Defendants' bookkeeper which was turned over in 2014 to Gregory Gannon who used it for CAL business purposes, and in early 2015 transferred all remaining files from the iMac to the HP.  *Id.* ¶ 14.  According to Gregory Gannon, the iMac was left in the family's garage from which his wife, without his knowledge, discarded it in the "summer of 2015."  *Id.* ¶ 15.  In her affidavit, Sheila Gannon stated that the iMac 27 computer previously used by Defendant Gregory Gannon was discarded, without Gregory Gannon's knowledge, by her sometime during the summer of 2015.  Dkt. 49-4 ¶ ¶ 5, 6.  In his affidavit, Defendant Gordon Gannon states that prior to responding to Plaintiff's document requests, he reviewed all pertinent e-mails stored in an external hard drive after backing up all documents stored in an iMac 27 computer

---

[2]   The record does not indicate any such stipulation was ever executed.

he, like Defendant Gregory Gannon, used at that time, Dkt. 49-5 ¶ 17, and forwarded copies of relevant e-mails to Defendants' attorney who in turn served them on Plaintiff. Dkt. 49-5 ¶ 19.

According to Gregory Gannon, he has reviewed all the files on the HP computer and avers all responsive documents including e-mails have now been produced to Plaintiff. *Id.* ¶ 16.  However, Gregory Gannon also disclosed, for the first time in this action, Dkt. 51 ¶ 5, the existence of a host server (as opposed to the CAL e-mail account, used by the Gannon Defendants, which Defendants had identified in response to Plaintiff's interrogatories in a related state court action, *see* Dkt. 53-1 at 6, Interrogatory No. 16)) for his e-mails maintained for Defendants Gregory and Gordon Gannon while they were acting as managers of CAL, by one Paul Connelly ("Connelly"),[3] a non-party, during the period February 2009 – October 2013 ("the Cataclean server").  Dkt. 49-3 ¶ 21.  In particular, Plaintiff maintains Defendants did not, in response to Plaintiff's interrogatories and document requests, disclose the location or identity of the server or the custodian of the server as such, *see* Defendants' Initial Disclosures, Exh. C, Dkt. 51-3; von Simson Declaration, Dkt. 51 ¶ 7; von Simson Declaration, Dkt. 53 ¶¶ 3-5,[4] but merely mentioned the existence of a "catacleanus.com" e-mail account in response to Plaintiff's interrogatories in the state court action.  *See* Dkt. 53-1 at 6-7 re: Interrogatory No. 15; Dkt. 53-2 at 6-7 re: Interrogatory No. 16. Although Defendant Gregory Gannon averred "[a]ny hard copies of" "the information or e-mails stored on that [the Cataclean] server" were provided to Plaintiff "in discovery in

---

[3]   The record indicates three different spellings for Mr. Paul Connelly's name:  Connelly, Dkt. 50-2 at 4; Conneley, Dkt. 50-2 at 4; Connally, Dkt. 51 ¶ 4.
[4]   In answer to Plaintiff's Interrogatory No. 15, requesting Defendants identify all persons or entities which had provided "computer services" to Defendants, Defendants Gordon and Gregory Gannon stated that "Respondent is not aware of any."  Dkt. 53-1 at 6; Dkt. 53-2 at 6.

prior New York state litigation," Dkt. 49-3 ¶ 22 (bracketed material added), Defendants'

attorney subsequently advised Plaintiff's attorney that Defendants had "no specific

recollection of requesting that copies of the information stored on the Cataclean server

be provided." Dkt. 51 ¶ 12 (referencing Dkt. 51-2– a January 3, 2016 e-mail of Stephen

Szymoniak, Defendants' attorney, to Charles von Simson, Plaintiff's attorney).

Defendants' attorney further advised Plaintiff that Defendant Gregory Gannon recalled

that the Cataclean e-mail server "had been shut down." Dkt. 51-2 ¶ 3. Based on

Defendants' refusal to assist Plaintiff in obtaining access to Paul Connelly, the custodian

of Defendants' heretofore undisclosed e-mail server in order to obtain copies of stored

responsive documents, Dkt. 51 ¶ 13, Plaintiff concluded Defendants were resisting

discovery of relevant e-mails causing Plaintiff to obtain directly from Connelly a back-up

copy of the Defendants' e-mails stored on the Cataclean server which Plaintiff is

reviewing with the assistance of a forensic electronic discovery expert. Dkt. 51 ¶ 14.

According to Plaintiff, based on an initial review of the back-up file obtained by Plaintiff,

in the expert's opinion the back-up file from the Cataclean server contains a "significant

volume" of relevant e-mails. *Id.* ¶ 15.

    In opposing Plaintiff's sanction request, Defendant Gordon Gannon claims he

was not properly served with the summons and complaint in this case and that as a

New Jersey resident who has not transacted business in New York State, the court

lacks personal jurisdiction over him. Dkt. 49-5 ¶¶ 29-30. Defendant  Gordon Gannon

also asserts that his pending motion to dismiss on this ground, Dkt. 20, filed along with

Defendants' motion to vacate a default on October 28, 2014 (which was granted by the

District Judge, Dkt. 24), remains unresolved by the court. *Id.* ¶ 33. Notwithstanding this

objection, Defendant Gordon Gannon states he will attend a deposition in this district if directed by the court.  *Id.* ¶ 38.

In its reply, Plaintiff contends Defendants failed to identify the Cataclean server in Defendants' initial disclosures pursuant to Fed.R.Civ.P. 26(a), Dkt. 51 ¶ 7 (referencing Dkt. 51-2), which disclosure could have avoided Plaintiff's motions to compel on the issue of Defendants' e-mails, Dkt. 51 ¶ 8, and that contrary to Defendant Gregory Gannon's assertions, when Plaintiff served its document requests in this action because he had knowledge of the server's location and custodian Paul Connelly, Defendant Gregory Gannon had access to the Cataclean server.  Dkt. 51 ¶¶ 9-10.

In Plaintiff's supplementary response, Plaintiff represents that in answering Plaintiff's interrogatories served in the related state court action Defendants failed to describe the Cataclean e-mail server as a storage device for Defendants' responsive e-mails.  *See* Dkt. 53 ¶¶ 3-5 (referencing Defendant Gordon Gannon's interrogatory answers dated September 22, 2014, to Plaintiff's Interrogatories Nos. 15-16, Dkt. 53-1 at 6-7 and Defendant Gregory Gannon's interrogatory answers dated September 22, 2014 Dkt. 53-2 at 6-7).  Specifically, Plaintiff contends, Dkt. 51 ¶ 11, the "catacleanus.com" e-mail server was "newly identified" by Defendant Gregory Gannon, because a plain reading of Defendants Gordon and Gregory Gannon's related interrogatory answers to Plaintiff's Interrogatory No. 16, requesting identification of Defendants' e-mail providers in the state action, included the "catacleanus.com" reference but does not identify this e-mail account or website as a server  and thus a storage device for Defendants' e-mails.[5]

---

[5]  By declaration of Defendants' attorney, Dkt. 54, Defendants object to Plaintiff's Supplemental Declaration (Dkt. 53) as an unauthorized sur-reply filed in violation of Local Rule Civ.P. 7(a)(6).  However,

At the outset, the court finds no merit in Defendants' contention that the Defendants fully complied with their discovery obligations because the parties had reached, through mediation, an understanding that Defendants intended to withdraw nearly all of Defendants' previously asserted various forms of property rights in the Cataclean product, triggering Plaintiff's action, including the design of its bottles and labelling used to market, distribute and facilitate use of the product, except for Defendant Gregory Gannon's common law claim to the design of the Cataclean bottle, and thus justified Defendants' failure to provide complete responses to Plaintiff's discovery requests.  Plaintiff contends that Defendants' adherence to this single common-law claim nevertheless warranted the broad scope of Plaintiff's requests, and Defendants do not argue otherwise.  Plaintiff further contends, also undisputed by Defendants, that Defendants' willingness to limit Defendants' claims in this action occurred after the court granted Plaintiff's second motion to compel in the December 4, 2015 D&O.  *See* Dkt. 51 ¶ 28; Dkt. 52 (*passim*).  Thus, that nearly all of Plaintiff's claims eventually would be mooted by some future stipulation did not warrant Defendants' failure to timely provide relevant document discovery until after Plaintiff's second motion to compel, filed October 28, 2015, and cannot avoid sanctions pursuant to Rule 37(a)(5)(A) which requires sanctions where discovery responses are provided after a motion to compel is filed unless the moving party failed to attempt to avoid motion practice, such failure was substantially justified, or an award of sanctions under the circumstances would be unjust.

---

as the court finds Plaintiff's supplemental filing provides relevant information, the filing is approved *nunc pro tunc,* and Defendants' objection on this ground is overruled.

Here, that Plaintiff had previously moved, in compliance with Fed.R.Civ.P. 37(a)(1), to compel and the court granted from the bench Plaintiff's first motion establishes Plaintiff has satisfied the good-faith attempt to avoid judicial intervention and Defendants do not argue otherwise.  Like Defendants' contention that the anticipated reduction in Plaintiff's claims relaxed Defendants' duty to more thoroughly and promptly respond to Plaintiff's document – stored e-mails – production requests, Defendants' further contention that Defendants, particularly Defendant Gordon Gannon, were not obliged to respond to Plaintiff's discovery requests because Defendants had previously moved to dismiss based on a lack of personal jurisdiction also has no merit.  While it is true, as previously noted, *supra*, at 6, that when Defendants moved to vacate the default Defendants also moved for dismissal before Judge Skretny based on jurisdiction issues, and the court has not yet addressed Defendants' jurisdictional motion, Defendants nevertheless have not taken steps to request a ruling by the District Judge on this issue and, instead, have proceeded to respond to Plaintiff's discovery requests and Plaintiff's motions to compel without seeking a stay pending resolution of the jurisdictional questions – lack of proper service and long-arm jurisdiction – raised by Defendants' motion.[6]  Moreover, Defendants have responded to Plaintiff's recently filed motion for summary judgment.  *See* Dkt. 57.  Finally, in the Scheduling Order filed February 25, 2015, the court specifically required Defendants to file a motion to dismiss on the jurisdictional issue by March 27, 2015 (Dkt. 31), but no further motion was filed. Although under Judge Skretny's referral order, Dkt. 26, the undersigned is without authority to consider dispositive motions and therefore cannot address Defendants'

---

[6]  Plaintiff opposed Defendants' motion to dismiss on the ground it was untimely under Fed.R.Civ.P. 12(a)(1), *i.e.*, not filed within 21 days of service of the summons and complaint.  Dkt. 21 at 12.

jurisdictional defense, caselaw indicates that where a defendant fails to object to a motion to compel discovery based on a lack of personal jurisdiction, such failure constitutes an acquiescence to jurisdiction, or a willingness to litigate as a form of consent to the court's jurisdiction which does not bar judicial consideration of a motion to compel.  *See North Shore Concrete and Associates, Inc. v. City of New York*, 1996 WL 391597, at *2 (E.D.N.Y. July 10, 1996) (failure to oppose motion to compel by asserting lack of personal jurisdiction established that non-party witness acquiesced to court's jurisdiction) (citing caselaw).  Here, a review of Defendants' opposition to Plaintiff's motions to compel (see Dkts. 37 and 45) (*passim*) shows that in neither of Defendants' opposition papers did Defendants raise the jurisdictional defense.  Thus, because of Defendants' failure to oppose on personal jurisdiction grounds Plaintiff's motions to compel production of e-mails and Defendant Gordon Gannon's deposition, Defendants' belated reliance on Defendants' jurisdictional motion presents no bar to the imposition of sanctions for failure to more completely respond to Plaintiff's document production requests in this matter.

As noted, sanctions, at a minimum reasonable attorneys fees, incurred in prosecuting a motion to compel are mandated by Rule 37(a)(5)(A) unless the failure of the responding party to provide discovery was substantially justified or an award of attorneys fees would, under the circumstances, be unjust.  A party's failure to provide discovery is substantially justified if a genuine dispute exists or if there is an objectively reasonable basis for the failure.  *See Parsi v. Daioleslam,* 778 F.3d 116, 126 (D.C. Cir. 2015) (citing caselaw).  An award of attorneys fees may be unjust where the party's failure was based on factors beyond the party's control.  *See Scott-Iverson v.*

*Independent Health Association, Inc.*, 2016 WL 1458239, at *3 (W.D.N.Y. Apr. 14,

2016).  Here, the record supports a finding that as to Defendant Gordon Gannon's

refusal to schedule an oral deposition, such refusal was not substantially justified.

Although Gordon Gannon and his counsel may have believed the court lacked

jurisdiction over him, this objection was not interposed by Defendants in opposition to

Plaintiff's motions to compel, nor in accordance with the Scheduling Order, and, as

such, it is not unreasonable to find it was waived for the purposes of Plaintiff's motion to

compel Gannon's deposition.  *See North Shore Concrete and Associates, Inc.*, 1996

WL 391597, at *2.  Additionally, Defendants' failure to reference the Cataclean server in

this action when Defendants could have done so in Defendants' disclosures and

responses to Plaintiff's document requests, as well as in a related state court action,

and later disclosed its existence for the first time in this action in response to the

December 4, 2015 D&O, supports that there was no obstacle beyond Defendants'

control, for example any refusal by Mr. Connelly's to provide a copy of the back-up

stored e-mails upon Defendants' request, to such production in response to Plaintiff's

document requests and motions.  Defendants point to no other circumstances that

would warrant a finding that it would be unjust to award attorneys fees as to this part of

Plaintiff's motion.  As to Defendants' production of CDs and a flash drive which

contained copies of Defendants' documents and e-mails stored on the Gannon

Defendants' personal computers after Plaintiff's motion was filed, *see* December 14,

2015 D&O at 1, other than Defendants' irrelevant belief that the pace of discovery in this

case should be slower because Defendants anticipated the number of Plaintiff's claims

were to be reduced, such belief was unreasonable given that Defendants, particularly

Gregory Gannon, intended to continue to assert common law protection in the

Cataclean bottle design and a copyright in its labelling thereby requiring Plaintiff to

engage in comprehensive discovery requests directed to these asserted interests.

Significantly, Defendants did not request a protective order to limit the scope of

discovery pursuant to Fed.R.Civ.P. 26(c) based on this supposed ground.  Further,

Defendant Gregory Gannon's assertion that e-mails from the Cataclean server had

been provided to Plaintiff was subsequently contradicted by Defendants' attorney, as

noted, *supra*, at 5 (referencing Dkt. 51 ¶ 12).  Thus, Defendants' repeated failures to

identify the Cataclean server as a source of responsive documents or to provide

responsive e-mail documents which could have been obtained by Defendants from the

undisclosed Cataclean server and the Gannon Defendants' computers prior to Plaintiff's

motions were not substantially justified, and Defendants point to no circumstances

beyond Defendants' control, including a lack of access, excusing an earlier and more

complete production that would render the award of Plaintiff's attorneys fees as to this

component of the dispute unjust.

Regarding the Cataclean e-mail server utilized by Defendants until 2013,

particularly Defendant Gregory Gannon, when Plaintiff served on April 17, 2015 the

document request at issue, the court considers whether Defendant Gregory Gannon,

had possession, custody, or control of responsive documents as a basis to require

production by a party as required by Fed.R.Civ.P. 34(a)(1) ("Rule 34(a)(1)") of the

server maintained by a non-party.  Here, the record does not indicate Gregory Gannon

had physical possession or custody of the server at that time as the device was

maintained by Connelly apparently at a location other than premises used by

Defendants for Defendants' business purposes while, for example, CAL's managers .

Nevertheless, a party may, for Rule 34(a)(1) purposes, have sufficient control of

responsive documents despite the absence of physical control if the party has actual

control or the practical ability to obtain documents from a non-party in response to a

discovery request. *See Alexander Interactive, Inc. v. Adorama*, 2014 WL 61472, at *3

(S.D.N.Y. Jan. 16, 2014) (citing caselaw); *see also In re NTL, Inc. Securities Litig*, 244

F.R.D. 179, 195 (S.D.N.Y. 2007) (citing caselaw).  For purposes of Rule 34(a)(1), actual

control by a party includes where the party has both access and the practical ability to

possess the requested documents, here copies of the Defendants' e-mails responsive

to Plaintiff's requests, stored by Defendants on the Cataclean server in connection with

the conduct of CAL's business by the Gannon Defendants.  *Alexander Interactive, Inc.*,

2014 WL 61472, at *3 (quoting *Thai Lao Lignite (Thailand) Co. v. Government of Lao*

*People's Democratic Republic*, 924 F.Supp.2d 508, 515 (S.D.N.Y. 2013)).  Evidence

required to establish such practical ability to obtain documents includes "cooperative

agreements or contracts between the responding party and non-party, the extent to

which the non-party has a stake in the outcome of the litigation, and the non-party's past

history of cooperating with document requests."  *Id.*  "Where control is contested, the

party seeking production of documents bears the burden of establishing the opposing

party's control over those documents."  *Id.* (citing caselaw).

In this case, Defendant Gregory Gannon belatedly acknowledged the existence

and location of the Cataclean e-mail server which had been used by the Gannon

Defendants over a substantial period of time, maintained by Connelly, a non-party, who

promptly, Dkt. 51 ¶ 14, responded to Plaintiff's subpoena to obtain a copy of Defendant

Gregory Gannon's e-mails stored on the server thus indicating the e-mails remained readily available on the server well after the Gannon Defendants were terminated in 2013 from their managerial positions in CAL.   Moreover, by his belated disclosure in response to the court's order to show cause, Defendant Gregory Gannon acknowledged his prior use of the server and awareness of the identity of Mr. Connelly as the custodian who maintained the Cataclean server.   Significantly, Defendant Gregory Gannon's disclosure of the Cataclean e-mail server came as a result of his declaration in response to the court's direction in the December 4, 2015 D&O requiring Defendants list all storage devices used by Defendants for e-mail storage during the period 2010-2014 whether maintained by Defendants or a third-party, December 4, 2015 D&O at 4, supporting that absent the court's required full disclosure regarding Defendants' use of computer data storage services, including any provided by a third-party, the existence of this apparent cache of responsive information would have remained unknown to Plaintiff.   Although Plaintiff points to no specific examples of prior cooperation between Defendants and Connelly with respect to Defendants' ability to access the records stored on the server after 2013, that Connelly had maintained the server over a substantial period of time for Defendants, particularly Gregory and Gordon Gannon, while the Gannon Defendants, and CAL, were until 2013 his customers and readily cooperated with Plaintiff by responding to Plaintiff's subpoena in January 2016, providing a copy of Defendants' e-mails which remained stored on the server, reasonably supports a finding that Connelly would have equally cooperated with Defendants, who were Connelly's former customers and to whom Connelly had over several years provided day-to-day computer services as the person who maintained the

server, had they contacted him and requested he search the server and  provide a hard

copy of Defendants' e-mails for production to Plaintiff.  *See In re NTL, Inc. Securities*

*Litig*, 244 F.R.D. at 196 (absence of continuing business or contractual relationship

providing for party's right to obtain documents does not bar finding that responding party

had practical ability to obtain and produce documents) (citing *Exp.-Imp. Bank of the*

*United States v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341-22 (S.D.N.Y. 2005)

(plaintiff bank had practical ability to obtain relevant documents from its non-party

former employee or at least was required to request its former employee to produce the

documents "before asserting that they have no control over documents in the former

employee's possession."))  Further, Defendants do not dispute Defendants had the

practical ability to obtain a copy of Defendants' e-mails from Connelly when Defendants

were served with Plaintiff's document production request on April 17, 2015.

Additionally, that the server had been shut-down, as Defendants argue, Dkt. 52 at 3 ¶

15, did not, as demonstrated by Plaintiff's ability to obtain hard copies of Defendants' e-

mails, affect the continued presence of Defendant's e-mails stored on the server and

Defendants' ability, based on Defendants' continued ownership interest in the stored e-

mails, to request Connelly to provide Defendants with a copy of all Defendants' e-mails

then stored on the server responsive to Plaintiff's request.  *See Brown v. Tellermate*

*Holdings, Ltd.*, 2014 WL 298705,1 at *8 (S.D. Ohio July 1, 2014) (information, such as

e-mails in a Google or Outlook account, stored on a server owned or maintained by an

e-mail provider remains owned by the e-mail account user subject to discovery).

Defendants, particularly Defendant Gregory Gannon's, failure to make a similar inquiry

and request of Connelly in response to Plaintiff's document requests together with

Defendants' attorney's refusal to cooperate with Plaintiff in contacting Connelly

therefore amounts to a conscious disregard of Defendants' duty of production of

relevant information justifying the inference that Defendants were thereby attempting to

avoid such production.  That Defendants disclosed Defendants' Cataclean e-mail

account or website, but not the Cataclean e-mail server on which such e-mails were

stored, in the state action ignores the difference between an e-mail account and a

server, which enables providing the e-mail service to a user such as Defendants, or

storage device for computer data such as e-mail back-up records,[7] and is therefore

irrelevant to whether Defendants failed in their obligation to search for and produce

responsive e-mail records stored on the Cataclean server, or its identity and location, in

this action.  *See Brown*, 2014 WL 2987051, at *2 (responding party and counsel have

duty to make reasonable investigation to locate and produce ESI responsive to

discovery requests).  Defendants' response to Plaintiff's Document Demand No. 24,

Dkt. 42-5 at 8, seeking documents "referring or relating to" Defendant Gregory

Gannon's rights in the Cataclean trade dress, design and label, that all of Defendants'

responsive documents, including copies of relevant e-mails, were previously provided to

Plaintiff was therefore untrue.  Taken as whole, the record thus supports Defendants

had the practical ability based on Defendants' prior business relationship with Mr.

Connelly and Connelly's demonstrated cooperativeness, *see Alexander Interactive, Inc.*,

2014 WL 61472, at *3; *In re ATL, Inc. Securities Litig.*, 244 F.R.D. at 196-97 (citing *Asia*

---

[7] "Email (Electronic Mail):  An electronic means for sending, receiving, and managing communications via a multitude of different structured data applications (email client software), such as Outlook or Lotus Notes, or those often knows as "webmail," such a Google Gmail or Yahoo Mail."  THE SEDONA CONFERENCE GLOSSARY: E-DISCOVERY & DIGITAL INFORMATION MANAGEMENT (THIRD EDITION), September 2010 Version at 19.
"Server:  Any central computer on a network that contains ESI or applications shared by multiple users of the network on their client computers.  A computer that provides information to client machines."  *Id.* at 47.

*Pulp & Paper Co.*, 233 F.R.D. at 341-42), to obtain and produce these records in response to Plaintiff's April 2015 document requests as required under Rule 34(a)(1) and failed to do so timely in order to avoid the necessity of Plaintiff's repeated motions seeking such production.  As such, Defendants' failure to identify fully and produce the e-mail records stored on the Cataclean server and the other documents including copies of e-mails, floppy discs, and hard drives, belatedly produced by Defendants from their own computers, prior to Plaintiff's motions was not substantially justified, *see* Rule 37(a)(5)(A) (discovery responses provided after motion to compel subject to sanctions), and no circumstances are present that would make an award of Plaintiff's attorneys fees unjust.

Turning to the proper allocation of Plaintiff's expenses between Defendants and Defendants' attorney as required by Rule 37(a)(5)(A), the record indicates that Defendants' failure to timely produce responsive documents prior to Plaintiff's motions resulted from Defendants' attorney's erroneous views as to a justification, such as a possible reduced scope of Plaintiff's claims, for Defendants' piecemeal responses. Further, because counsel served Defendants' answers to Plaintiff's interrogatories in the state action which made reference to the Defendants' Cataclean e-mail account and website, but not the Cataclean server disclosed by Defendant Gregory Gannon in this action, counsel either knew of or reasonably should have known of the Cataclean server from Defendant Gregory Gannon as a possible source of responsive e-mails requiring Defendants to make a reasonable search for and produce such records.  Nor does the fact that the Cataclean server was shut down as a result of Plaintiff's letter of Connelly requesting a cessation of use of the Cataclean trademark in connection with maintaining

Defendants' e-mail account, as Defendants argue, Dkt. 52 at 3 ¶ 15, excuse

Defendants' failure to produce.  *See Brown*, 2014 WL 2987051, at *6 (deactivation of e-

mail account does not destroy stored information available for required production).

Counsel therefore had a duty to facilitate full disclosure and production by Defendants.

*See Alexander Interactive, Inc. v. Adorama, Inc.*, 2013 WL 6283511, at *7 (S.D.N.Y.

Dec. 4, 2013) ("'Discovery in our adversarial system is based on a good faith response

to demands for production by an attorney constrained by the Federal Rules and by

ethical obligations.'" (quoting *Rozell v. Ross-Holst*, 2006 WL 163143, at *4 (S.D.N.Y.

Jan. 20, 2006))); *see also, Brown*, 2014 WL 2987051, at **18, 24 (awarding attorneys

fees as sanctions jointly against defendant and its counsel where counsel failed to

reasonably investigate to assure defendant's compliance with valid discovery request

for stored ESI).  Thus, it is proper to allocate responsibility for Plaintiff's attorneys fees

equally between Defendants and Defendants' attorney pursuant to Fed.R.Civ.P.

37(a)(5)(A).

## CONCLUSION

Based on the foregoing, Plaintiff's request for expenses including reasonable

attorneys fees incurred in connection with Plaintiff's motions to compel is GRANTED.

Plaintiff's affidavit of such expenses shall be filed <u>within 30 days</u>; Defendants' response

shall be filed <u>within 15 days</u> thereafter.  Oral argument shall be at the court's discretion.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  May 10, 2016
         Buffalo, New York